UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELLE CASEY,

      Plaintiff,

v.                                                                Case No. 8:09-cv-210-T-24TBM

I.C. SYSTEM, INC.,

      Defendant.

_____/

## **ORDER**

This cause comes before the Court on Plaintiff Danielle Casey's Motion for Summary Judgment (Doc. No. 15) as to her claims against Defendant I.C. System, Inc. (ICS") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Florida Consumer Collection Practices Act, ("FCCPA"), Fla. Stat. § 559.72.[1]  ICS filed a response in opposition to the motion.[2]  (Doc. No. 20.)  For the reasons stated herein, the motion is denied.

**I.    Background**

The following facts are undisputed: ICS is a debt collection agency. On February 28, 2008, ICS initiated efforts to collect a debt on behalf of Gastroenterology Associates of Sarasota, a medical service provider located in Sarasota, Florida. In particular, ICS sought to collect a past

---

[1]Casey's Complaint contains a third count for common law invasion of privacy by intrusion. (Doc. No. 2.)  Casey did not move for summary judgment as to this count, and this count is still pending before the Court.

[2]ICS urges the Court to enter summary judgment in its favor. ICS, however, did not move for summary judgment, and therefore, the Court cannot and has not considered whether to grant summary judgment to ICS on any counts alleged by Casey.

due balance of $922.45 from Francesco Mele, the husband of Plaintiff Danielle Casey, for medical services he received from Gastroenterology Associates of Sarasota. In an effort to collect the debt, ICS mailed several letters to Mele and placed numerous telephone calls to his residence. The content and number of those telephone calls is disputed by the parties.

The parties agree, however, that on September 27, 2008, Plaintiff Casey received a telephone call from Lisa Smith, an employee of ICS, regarding the debt owed by Mele. It is this telephone call that forms the basis of Plaintiff Casey's case. Casey contends that Smith spoke to her in a rude, harassing, and threatening manner. ICS denies these allegations.

On December 9, 2009, Casey filed a three-count complaint against ICS alleging violations of the FDCPA and FCCPA, as well as a claim for common law invasion of privacy by intrusion. Casey seeks to recover actual damages, damages for her emotional and mental anguish, punitive damages, statutory damages of $1,000, and her attorneys' fees and costs.

## II.     Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go

beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III. Discussion

Casey contends that ICS's telephone calls violated various provisions of the FDCPA, as well as the FCCPA, and therefore, she is entitled to summary judgment on both claims. The Court shall address each argument in turn.

#### A. Count I: Violations of the FDCPA

##### 1. 15 U.S.C. § 1692d(5)

The FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Such harassing or abusive conduct prohibited by the FDCPA includes, but is not limited to: "(5) [c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

Casey contends that ICS placed no less than 171 telephone calls to her residence during a six-month period in attempting to collect the subject debt. She argues that such an excessive volume of phone calls constitutes conduct that is intended to harass, oppress, or abuse. As evidence of these repeated and continuous phone calls, Casey points to ICS's phone records, as

well as testimony from Sue Johnson, Director of Legal Affairs for ICS, who testified regarding the number of calls attempted by ICS.

The Court finds, however, that a factual issue remains as to the number of times that ICS caused Casey's telephone to ring and whether that was done repeatedly or continuously with the intent to annoy, abuse, or harass. The telephone records do not conclusive establish that ICS caused the telephone at Casey's residence to ring 171 times,[3] nor did Johnson conclusively testify to this alleged fact. Rather, she testified that 171 calls were attempted, and the remainder of her testimony on this issue is unclear. Furthermore, ICS submitted an affidavit from Johnson–which Casey has not disputed–in which she states that, from February 28, 2008 through October 10, 2008, ICS had actual telephone conversations with Casey or her husband on only nine occasions. Perhaps most significant is Casey's own affidavit in which she attests to having only one telephone conversation with ICS–the September 27, 2008 conversation with Lisa Smith.[4] Based on this evidence, a genuine issue of material fact exists regarding whether ICS caused Casey's telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass.

### 2. 15 U.S.C. § 1692d(6)

---

[3]The Court has reviewed the entirety of the telephone records filed in this case. It appears that some of the records about which ICS's corporate representatives, Scott Bultje and Sue Johnson, testified were not filed as exhibits in support of the summary judgment motion. These records may or may not demonstrate that ICS caused Casey's telephone to ring 171 times; however, because the complete records were not filed, the Court did not have the benefit of considering them when ruling on this motion.

[4]Apparently, Casey's deposition was taken during the course of discovery in this case. However, because neither party filed the deposition transcript, the Court does not have the benefit of considering her testimony when ruling on this motion.

The FDCPA also prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Casey contends that ICS's employee, Lisa Smith, violated this statute during the September 27, 2008 conversation with Casey.

Casey submitted an affidavit in which she detailed that conversation. She attests to the following: that the caller identified herself only as "Lisa Smith" and would not provide Casey with any information about the company on whose behalf she was calling, or information about the debt she sought to collect; that Smith spoke to her in a rude, harassing, abusive and threatening manner; that Smith repeatedly raised her voice and shouted, "PAY YOUR BILL, PAY YOUR BILL, PAY YOUR BILL;" that when Casey became upset, Smith laughed at her in a mocking fashion; that Smith repeatedly addressed Casey by Casey's husband's name, despite the fact that Casey explained more than once that the debt belonged to her husband; that Smith insinuated that Casey was a deadbeat who often refused to pay her bills; that, when Casey explained to Smith that she was pregnant and requested that Smith calm down, Smith threatened to place the debt on Casey's credit report if Casey did not pay ICS immediately; and that, when Casey asked to speak to a supervisor, Smith responded that she could only do so if she paid ICS immediately.

Casey contends that her version of the September 27, 2008 conversation is further bolstered by the deposition testimony of ICS's own corporate representatives, Scott Bultje and Susan Johnson. Both Bultje and Johnson testified that they were the representatives of ICS with the most knowledge regarding the communications in this case. However, neither one of them was able to deny (or confirm) Casey's allegations. In particular, Scott Bultje testified that he had not spoken to Lisa Smith about the September 27, 2008 conversation she had with Casey, and

5

that it is unlikely that Smith remembers the conversation. Likewise, Susan Johnson testified that she did not know whether Smith made the harassing and threatening statements. Casey argues, therefore, that because ICS's own corporate representatives–the ones that ICS designated with the most information about the September 27, 2008 conversation–cannot refute her allegations, she is entitled to summary judgment on this claim.

The Court, however, must find that genuine issues of material fact exist that preclude summary judgment because ICS submitted an affidavit from Lisa Smith that contradicts Casey's version of the conversation. In that affidavit, Smith specifically denies each of Casey's allegations regarding her rude, harassing, or abusive conduct. In particular, Smith states the following: that she identified herself to Casey and informed Casey that she was calling on behalf of ICS; that she never shouted "PAY YOUR BILL" at Casey; that she did not state that Casey was required to pay her husband's bill; that Casey did not inform her that she was pregnant; that she never threatened to report the debt on Casey's credit; and that Casey did not ask to speak with a supervisor. Viewing the entirety of the record in the light most favorable to ICS, including this affidavit, the Court finds that ICS has raised a genuine factual dispute regarding this conversation, particularly, whether ICS violated § 1692d by failing to identify itself, or by engaging in harassing, oppressive or abusive conduct.

### 3. 15 U.S.C. § 1692e(5)

The FDCPA also prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e contains a non-exhaustive list of practices that fall within such prohibited conduct. In particular, the proscribed conduct includes "threat[ening] to take any action that cannot legally be taken or that is not

6

intended to be taken." 15 U.S.C. § 1692e(5).

Here, Casey contends that ICS violated this subsection of the FDCPA when Lisa Smith threatened to report the debt owed to Gastroenterology Associates of Sarasota to the credit reporting agencies on Casey's credit. Casey contends that ICS made this threat, knowing that the debt was owed by Casey's husband and not Casey herself, and therefore it was improper for ICS to report the debt on her credit.

Again, ICS raised a genuine issue of material fact regarding these allegations by submitting an affidavit from Lisa Smith that contradicts Casey's version of their conversation. Accordingly, Casey is not entitled to summary judgment on this claim.

### 4. 15 U.S.C. § 1692g

Section 1692g of the FDCPA requires that a debt collector send a validation notice to the debtor, informing the debtor that he or she has thirty days to dispute the debt and to request the name and address of the original creditor. *See generally,* 15 U.S.C. § 1692g. Under this provision, the validation notice must not be overshadowed or contradicted by other messages from the debt collector. *See id.* The analysis of whether the language of a communication is deceptive under the FDCPA is determined according to whether the "least sophisticated consumer" would have been misled. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).

Casey contends that ICS violated this statute when it made multiple phone calls to demand immediate payment from her, during the thirty-pay period after ICS sent its original validation notice on February 28, 2008. She contends that the least sophisticated consumer reasonably could be confused about her right to dispute the debt, notwithstanding the validation

7

notice.

The Court finds, however, that Casey has not presented sufficient evidence of a violation of this subsection of the FDCPA. In fact, Casey's own affidavit evidences that the first telephone conversation that she had with ICS was the conversation on September 27, 2008 with Lisa Smith. This conversation occurred nearly seven months after ICS sent its February 28, 2008 validation notice–well beyond the thirty-day period. And, as the Court has already ruled, what transpired during that conversation is disputed. Moreover, Casey has not presented any evidence of letters or phone calls from ICS during or after the thirty-day period that would overshadow or contradict the validation notice. Accordingly, Casey is not entitled to summary judgment on this claim.

## B. Count II: Violations of the FCCPA

Casey contends that ICS'c conduct during the September 27, 2008 conversation violated the FCCPA. Like the FDCPA, the FCCPA prohibits certain debt collection practices that are oppressive, harassing, or abusive. In particular, Casey alleges that ICS violated section 559.72(8), which provides that a debt collector cannot "[u]se . . . profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her . . . family." Casey also alleges that ICS violated section 559.72(15), which provides that a debt collector cannot "[r]efuse to provide adequate identification of herself . . . or her . . . employer or other entity whom she . . . represents when requested to do so by a debtor from whom she . . . is collecting or attempting to collect a consumer debt."

Casey contends that ICS violated these subsections of the FCCPA because Lisa Smith used abusive and threatening language and refused to identify herself. Again, as stated

8

previously, Casey is not entitled to summary judgment on these claims because ICS submitted an affidavit from Smith that contradicts Casey's version of the conversation.

### C. Affirmative Defenses

ICS contends that summary judgment must be denied for the additional reason that Casey has not shown that ICS's affirmative defenses are legally insufficient. In particular, ICS asserted in its Answer and Affirmative Defenses that any violation of federal or state law was unintentional and the result of a bona fide error. Both the FDCPA and the FCCPA contain a statutory "bona fide error" defense. That defense provides that a debt collector "may not be held liable . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also*, Fla. Stat. § 559.77(3).

ICS submitted an affidavit from Sue Johnson, Director of Legal Affairs, in which she details the efforts ICS makes to ensure compliance with the FDCPA and the FCCPA, including training and testing of employees. ICS contends that this is evidence that it maintains reasonable procedures to avoid the errors as alleged by Casey. Casey has not offered any argument to challenge any of ICS's affirmative defenses.

The Court concludes that ICS has raised an issue of fact as to whether its alleged violations of the FDCPA and the FCCPA were unintentional and the result of a bona fide error. ICS's intent, and whether the errors were bona fide, are issues of fact that cannot be resolved on summary judgment.

**IV. Conclusion**

In conclusion, the Court finds that genuine issues of material fact remain regarding whether the telephone calls that ICS made in an effort to collect the debt owed by Casey's husband violated various provisions of the FDCPA and the FCCPA, and whether ICS is entitled to a bona fide error defense. Accordingly, Casey's motion for summary judgment (Doc. No. 35) must be **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of January, 2010.

Copies to:

Counsel of Record

SUSAN C. BUCKLEW
United States District Judge